# IN THE UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

### CASE NO. 11-10338

NAIEL NASSAR, MD,

> Plaintiff - Appellee  Cross-Appellant

v.

UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER,

> Defendant - Appellant  Cross-Appellee

Appeal from the United States District Court for the Northern District of Texas
Case No. 3:08-CV-1337

## PETITION FOR REHEARING EN BANC
## OF APPELLANT, UNIVERSITY OF TEXAS SOUTHWESTERN
## MEDICAL CENTER

*Counsel for Appellant*

Daryl L. Joseffer
KING & SPALDING LLP
1700 Pennsylvania Ave NW, Suite 200
Washington, D.C. 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

Michael W. Johnston
KING & SPALDING LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Myrna Salinas Baumann
KING & SPALDING LLP
401 Congress Avenue, Suite 3200
Austin, Texas 78701
Telephone: (512) 457-2000
Facsimile: (512) 457-2100

Greg Abbott
Attorney General of Texas
Daniel T. Hodge
First Assistant Attorney General
David C. Mattax
Deputy Attorney General for Defense
Litigation
Robert O'Keefe
General Litigation, Division Chief
Lars Hagen
Assistant Attorney General
General Litigation Division
Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 463-2120
Facsimile: (512) 320-0667

## CERTIFICATE OF INTERESTED PERSONS

CASE NO. 11-10338

NAIEL NASSAR, MD,

Plaintiff - Appellee Cross-Appellant

v.

UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER,

Defendant - Appellant Cross-Appellee

The undersigned counsel of record for University of Texas Southwestern Medical Center certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

Appellant, University of Texas Southwestern Medical Center (a governmental entity of the State of Texas)

Appellee, Naiel Nassar, MD

*Counsel for University of Texas Southwestern Medical Center:*

| KING & SPALDING LLP | Office of the Attorney General of Texas |
|---|---|
| Daryl L. Joseffer | Greg Abbott, Attorney General of Texas |
| 1700 Pennsylvania Ave NW #200 | Daniel T. Hodge |
| Washington, D.C. 20006-4707 | Bill Cobb |
| Michael W. Johnston | David C. Mattax |
| 1180 Peachtree Street N.E. | Robert O'Keefe |
| Atlanta, GA 30309-3521 | Lars Hagen |
| Myrna Salinas Baumann | Darren G. Gibson |
| 401 Congress Avenue #3200 | P.O. Box 12548 |
| Austin, Texas  78701 | Austin, Texas 78711-2548 |

i

*Counsel for Naiel Nassar, MD:*

Brian P. Lauten                    Charla G. Aldous
Amy Bryant Lauten                  Brent R. Walker
SAWICKI & LAUTEN LLP               ALDOUS LAW FIRM
4040 N. Central Expressway         2311 Cedar Springs Rd.
Suite 850                          Suite 200
Dallas, Texas 75204                Dallas, Texas 75201


 /s/    Daryl L. Joseffer
Daryl L. Joseffer
Attorney for University of Texas Southwestern Medical Center
Defendant - Appellant Cross-Appellee
Dated: March 22, 2012

## FEDERAL RULE OF APPELLATE PROCEDURE 35 CERTIFICATION

Rehearing en banc is warranted because the panel's decision relies on circuit precedent *Smith v. Xerox Corp.*, 602 F.3d 320 (5th Cir. 2010), that conflicts with the Supreme Court's determination of the proper causation standard applied when a statute employs the same language ("because") included in the Title VII retaliation statute at issue here.  *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343 (2009).  This proceeding is also exceptionally important because *Smith* conflicts with the authoritative decisions of other courts of appeals and "creates an unnecessary split in the circuits."  602 F.3d at 336 (Jolly, J. dissenting); *see Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957 (7th Cir. 2010); *Fairley v. Andrews*, 578 F.3d 518 (7th Cir. 2009); *see also, e.g.*, *Hayes v. Sebelius*, 762 F. Supp. 2d 90, 110-15 (D.D.C. 2011) (rejecting *Smith*).

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

FEDERAL RULE OF APPELLATE PROCEDURE 35 CERTIFICATION ......... iii

TABLE OF AUTHORITIES ....................................................................................v

STATEMENT OF THE ISSUE.................................................................................1

STATEMENT OF THE COURSE OF PROCEEDINGS AND
      DISPOSITION................................................................................................1

INTRODUCTION ....................................................................................................2

STATEMENT OF FACTS .......................................................................................2

ARGUMENT AND AUTHORITIES.......................................................................7

    1.    *Smith* improperly applied Supreme Court precedent:
        A mixed-motive analysis is no longer applicable to
        Title VII retaliation claims ...................................................................7

    2.    The Medical School was entitled to a but-for causation
        instruction for Nassar's Title VII retaliation claim .............................9

    3.    This case demonstrates that the Title VII retaliation
        burden of proof makes a difference in the jury's evaluation
        of the evidence..................................................................................10

    4.    *Smith* conflicts with decisions of other circuits and contributes
        to an inconsistent body of law............................................................12

CONCLUSION......................................................................................................15

CERTIFICATE OF SERVICE ..............................................................................16

# TABLE OF AUTHORITIES

## CASES

*Barton v. Zimmer*,
  662 F.3d 448 (7th Cir. 2011) ...............................................................13

*Beckford v. Geithner*,
  661 F. Supp. 2d 17 (D.D.C. 2009)........................................................14

*Fairley v. Andrews*,
  578 F.3d 518 (7th Cir. 2009) ........................................................ iii, 13

*Flowers v. S. Reg'l Physician Servs. Inc.*,
  247 F.3d 229 (5th Cir. 2001) ...............................................................13

*Gross v. FBL Fin. Servs., Inc.*,
  129 S. Ct. 2343 (2009)................................................................passim

*Hayes v. Sebelius*,
  762 F. Supp. 2d 90 (D.D.C. 2011).................................................. iii, 14

*McNutt v. Bd. of Trs.*,
  141 F.3d 706 (7th Cir. 1998) ...............................................................13

*Price Waterhouse v. Hopkins*,
  490 U.S. 228 (1989)................................................................................8

*Serwatka v. Rockwell Automation, Inc.*,
  591 F.3d 957 (7th Cir. 2010) ................................................. iii, 12, 13

*Smith v. Xerox Corp.*,
  602 F.3d 320 (5th Cir. 2010) ......................................................passim

*Speedy v. Rexnord Corp.*,
  243 F.3d 397 (7th Cir. 2001) ...............................................................13

*Zhang v. Children's Hosp. of Phila.*,
  Civ. Action No. 08-5540, 2011 WL 940237
  (E.D. Pa. Mar. 14, 2011)......................................................................14

## FEDERAL STATUTES

42 U.S.C. § 2000e-2(m) .........................................................................9, 10, 12, 13

42 U.S.C. § 2000e-3.......................................................................................passim

42 U.S.C. § 2000e-5(g)(2)(B) ........................................................................9, 10, 13

42 U.S.C. § 12112(a) (2008)...................................................................................12

## OTHER AUTHORITIES

Andrew Kenny, Comment,
*The Meaning of "Because" in Employment Discrimination Law:
Causation in Title VII Retaliation Cases After Gross*,
78 U. CHI. L. REV. 1031 (2011) ........................................................................14

Kimberly Cheseseman, Recent Development,
*Smith v. Xerox Corp.: The Fifth Circuit Maintains Mixed-Motive
Applicability in Title VII Retaliation Claims*,
85 TUL. L. REV. 1395 (2011) ............................................................................14

Kourtni Mason, Article,
*Totally Mixed Up!: An Expansive View of Smith v. Xerox and Why
Mixed-Motive Jury Instructions Should Not Be Applied in Title VII
Retaliation Cases*,
38 S.U. L. REV. 345 (2011)................................................................................14

Michael Fox,
*5th Circuit En Banc Request on Smith v. Xerox, Please!*
(Mar. 25, 2010), http://employerslawyer.blogspot.com/2010/03/5th-
circuit-en-banc-request-on-smith-v.html ...........................................................15

Richard Moberly,
*The Supreme Court's Antiretaliation Principle*,
61 CASE W. RES. L. REV. 375 (2010) ...............................................................15

## STATEMENT OF THE ISSUE

Whether *Smith v. Xerox Corp.*, 602 F.3d 320 (5th Cir. 2010), upon which the panel relied to find no error in the district court's jury instructions, correctly determined that a mixed-motive instruction, as opposed to a but-for causation instruction, is appropriate for a retaliation claim under Title VII, 42 U.S.C. § 2000e-3.

## STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION

Plaintiff Naiel Nassar, M.D. sued the University of Texas Southwestern Medical Center ("Medical School") for retaliation under Title VII and obtained a jury verdict in his favor. R. 1868-81. After the district court signed a judgment on the verdict, R. 3768-63, and denied the Medical School's renewed motion for judgment as a matter of law, new trial, and remittitur, R. 3952, the Medical School timely appealed, R. 3953-56. On appeal, a panel of this Court (Judges Reavley, Elrod, and Haynes) affirmed the district court's retaliation judgment on liability.[1] Op. at 8-9, 11 (attached as Exhibit A). In doing so, the panel relied on *Smith* to conclude the district court had properly instructed the jury to apply a mixed-motive theory of retaliation. Op. at 9 n.16. The Medical School now seeks rehearing en banc to have the full Court consider whether *Smith* — a 2-1 panel decision with a strong dissent by Judge Jolly — was correctly decided.

---

[1] The panel vacated the district court's constructive discharge judgment, Op. at 6-8, 11, and reversed and remanded for reconsideration of Nassar's entitlement to retaliation damages. Op. at 2, 11.

## INTRODUCTION

This case highlights the problems with *Smith* and why burdens of proof matter to liability determinations in Title VII cases.  Nassar's retaliation claim is a narrow one: he contends the Medical School's Chair of Internal Medicine, Dr. Gregory Fitz, blocked his attempt to get a job at Parkland Health & Hospital System ("Hospital") in retaliation for making a claim of discrimination against Nassar's indirect supervisor, Dr. Beth Levine.  The Medical School and Nassar presented undisputed documentary evidence that Fitz consistently opposed Nassar's proposed employment at the Hospital based on an Affiliation Agreement between the Medical School and the Hospital, beginning *well before* Nassar engaged in protected activity and therefore *well before* any retaliatory animus could have existed.  The jury's evaluation of these facts was significantly different under a mixed-motive instruction than it would have been under a but-for causation instruction, because it allowed Nassar to recover merely by showing that retaliation was one of a combination of reasons that resulted in the blocking of his employment at the Hospital.  Accordingly, this case provides a suitable vehicle for the en banc Court to determine whether *Smith* correctly states the law regarding the burden of proof required for Title VII retaliation claims.

## STATEMENT OF FACTS

Nassar was an Assistant Professor of Medicine at the Medical School, R. 2701, and the Associate Director of Medicine of the Hospital's Amelia Court HIV-AIDS Clinic.   R. 2940.   Nassar's position exemplified the well-settled relationship between the Medical School and the Hospital: the Medical School's

faculty members provided total physician patient care to the Hospital's patients. DX-15, ¶ 4(c); R. 2665-70, 2727-30. That operating relationship was recorded in the 1979 Affiliation Agreement between the Dallas County Hospital District and the Medical School. DX-15; R. 2727-30. As a result of this agreement, physicians working within the Hospital's geography, including the AIDS Clinic, were required to have faculty appointments with the Medical School. R. 2665-70.

In 2004, Levine became Chief of Infectious Diseases at the Medical School, R. 2925-26, and served as one of Nassar's supervising faculty members, R. 2781-82. Nassar's immediate supervising faculty member, Dr. Phillip Keiser, served as Medical Director of the AIDS Clinic. R. 2324, 2781-82. Although Levine suggested to Nassar that he seek a promotion, DX-3, R. 2810-11, supported Nassar's successful promotion effort, DX-8, DX-10, and gave Nassar the highest evaluation ratings, R. 3055-57, DX-78, Nassar felt unfairly singled out by Levine. R. 2941. Nassar was unsatisfied with her approach to drafting his recommendation letters, R. 2341-43, believed she attempted to delay his promotion, R. 2813, 2947-48, and felt that she overly scrutinized his productivity and billing practices, *e.g.*, R. 2928-29. The Medical School promoted Nassar in March 2006. DX-11.

Despite his promotion, Nassar began discussions with the Hospital about switching his employer. R. 2955-56. At trial, Nassar testified that he wanted to work at "exactly the same job" in the AIDS Clinic but be employed by the Hospital instead of the Medical School. R. 2960. According to Nassar, he wanted to switch employers in part so that Levine would no longer be one of his supervising faculty members. R. 2960. The Hospital's Executive Vice President and Chief Medical

Officer, Dr. Samuel Ross, who had hiring authority, discussed Nassar's request with Nassar, Keiser, Fitz, and Sylvia Moreno, the Hospital's Director of HIV Services.  Supp. R. 4-6, R. 2581; DX-13, PX-19; *see* DX-14.

Ross knew that the full-time position Nassar held at the Hospital's AIDS Clinic required a faculty appointment at the Medical School.  Supp. R. 6-7, R. 2960.  Ross knew that the Affiliation Agreement, as well as the Hospital's bylaws, rules, and regulations, required that a physician seeking employment within the Hospital's geography hold a faculty appointment.  Supp. R. 6-7.  Ross also knew that the chairman of the Medical School's relevant department was the only person who could authorize the required faculty appointment.  *Id.*

Accordingly, Ross discussed Nassar's proposed switch of employer with Fitz.  DX-14; R. 2700-01.  In late March 2006, Fitz first raised the Affiliation Agreement to oppose the suggestion that Nassar would continue in his full-time position at the AIDS Clinic without being a Medical School faculty member.  DX-14.  Ross communicated Fitz's opposition in an e-mail to Nassar and Moreno on April 17, 2006, noting that Fitz previously expressed opposition to Nassar becoming a "Parkland employee."  DX-13, PX-19.

Fitz met with Nassar on April 27, 2006.  Recounting their meeting in an e-mail to Ross that same day, Fitz wrote, "[a]s per discussion," Nassar could not be a "Parkland employee" because "it would be against our operating agreement with Parkland to have them employ faculty directly."  DX-14.  Fitz noted that Nassar was "OK with this."  *Id*.  Nassar did not discuss this topic with Fitz again, and Fitz thought the issue had been put to rest.  R. 2712-13, 2755-56.

4

Unknown to Fitz, Nassar continued to negotiate with Hospital staff about switching his employer.  R. 2719, 2767.  Moreno was the primary individual communicating with Nassar about being employed by the Hospital, *see* R. 2781-82, but she did not have authority to hire Nassar, R. 2626-27, 2635, 2638.  Although Moreno was aware that Fitz needed to approve Nassar's proposed employer switch but opposed that request, *e.g.*, R. 2727-28, Moreno told Nassar that he could simply resign from the Medical School and be fully employed by the Hospital, DX-14.  From May through July 2006, Moreno processed paperwork for Nassar to be hired at the Hospital.  R. 2622.  But neither Moreno nor any other Hospital employee ever communicated with Fitz about their efforts to process employment paperwork for Nassar.  R. 2712-13, 2719, 2767.

By July 3, 2006, Moreno's efforts resulted in an unsigned offer letter from the Hospital, which set July 10, 2006 as Nassar's start date as a Hospital employee.  PX-16.  Moreno communicated with Nassar about the offer, R. 2595-96, and she believed that Nassar would be hired by the Hospital once he and Ross signed the offer letter, R. 2586.  But Moreno admitted that she did not have authority to hire Nassar.  R. 2626-27, 2635, 2638.  Believing he had secured employment with the Hospital, R. 2963, on July 3, 2006, Nassar wrote a letter resigning from the Medical School and accusing Levine of discriminating against him.  PX-15.  In that letter, Nassar thanked Fitz "for all [his] support," described interactions with Fitz as "pleasant and positive," and called Fitz "a very honorable person."  *Id.*

Fitz received Nassar's resignation letter on July 7, 2006.  DX-19; R. 2749, 2827-28.  The letter was the first time Fitz learned Nassar was claiming illegal

discrimination by Levine.  R. 2829.  Fitz was "very saddened" and "shocked" to receive the letter and "had not been aware of this sentiment" by Nassar.  R. 2709.

By July 10, 2006, the date Nassar expected to start at the Hospital, Ross had not signed the Hospital's offer letter.  *See* DX-20; Supp. R. 20-21.  When Nassar did not begin working on his proposed start date, he e-mailed Moreno that same day, stating he had not received an offer letter and was therefore "going West." DX-20.  When Ross learned this the next day, he e-mailed Nassar asking him not to commit to another job while Ross sought an "acceptable solution."  DX-21.

After Nassar resigned, Fitz and Ross met to discuss the AIDS Clinic. Supp. R. 10-11.  In that meeting, Fitz matter-of-factly told Ross that Nassar had alleged discrimination and that the Medical School was looking into Nassar's claim.  Supp. R. 10-12.  At trial, Keiser said that he also met with Fitz after Nassar resigned.  R. 2411.  According to Keiser, Fitz said he put a stop to Nassar's effort to be employed by the Hospital.  R. 2414-16.  While Keiser interpreted Fitz's comments as admitting retaliation, R. 2417, 2471, 2538, Fitz himself testified that he blocked Nassar's effort to switch employers because of the Affiliation Agreement, not because of retaliation.  R. 2661, 2686-87, 2711, 2716-17.  Fitz had also made his position clear in e-mails several months before Nassar resigned. DX-13, DX-14, PX-19.

Nassar signed an employment contract on July 29 for a job in California, before the Hospital took any action regarding his employment.  Although he later claimed his working environment was intolerable, Nassar remained at the Medical School until he began his job in California on September 1, 2006.  PX-15, DX-28.

Nassar later sued the Medical School claiming that he was constructively discharged from the Medical School and that Fitz blocked his employment at the Hospital in retaliation for Nassar's discrimination claim against Levine. *See* R. 1874-77. The district court submitted mixed-motive instructions to the jury based on *Smith v. Xerox Corp.* R. 3339-41. The jury found for Nassar under the mixed-motive theory because it believed Nassar showed the Medical School "acted at least in part to retaliate." R. 1876-77.

## ARGUMENT AND AUTHORITIES

The panel relied on *Smith v. Xerox Corp.* to find no error in the district court's mixed-motive jury instructions and affirmed the jury's retaliation verdict on liability. Op. at 8-9 & n.16 (citing 602 F.3d at 330). But *Smith* was wrongly decided and, as this case shows, the retaliation burden of proof makes a difference in the jury's evaluation of the evidence. By relying on *Smith*, the panel's decision deepens a conflict with the Supreme Court's decision in *Gross* and with decisions from other courts of appeals. It also contributes to an inconsistent body of law concerning the proper burden of proof in Title VII retaliation claims. The panel's application of *Smith* should be reviewed en banc, and *Smith* should be overturned.

1.  **_Smith_ improperly applied Supreme Court precedent: A mixed-motive analysis is no longer applicable to Title VII retaliation claims.**

The 2-1 *Smith* panel majority recognized a mixed-motive framework for Title VII retaliation claims notwithstanding the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343 (2009). 602 F.3d at 330. *Gross* determined that the "ordinary meaning" of the statutory language "because of"

requires a but-for causation standard, absent statutory language stating otherwise. 129 S. Ct. at 2349-50. If the statute is silent on allocating the burden of persuasion, the plaintiff must meet the but-for causation standard. *Id.* at 2351.

Despite stating several reasons "the *Gross* reasoning could be applied . . . to the instant [Title VII retaliation] case," and despite acknowledging the relevant Title VII retaliation provision contained "because" language, *Smith* declined to apply *Gross* to the Title VII retaliation context. 602 F.3d at 328-31. The panel majority determined that *Gross*'s consideration of the Age Discrimination in Employment Act ("ADEA"), as well as its cautionary language regarding statutory interpretation, meant that *Gross* did not control the panel's analysis of a Title VII retaliation claim. *Id.* at 329-30. The majority instead determined that *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), was controlling and proceeded to apply a mixed-motive framework to the Title VII retaliation claim. *Id.* at 320-30, 333 ("Illogical or not, that is the law we follow.").

The *Smith* majority was wrong. Moreover, because the parties in *Smith* did not seek rehearing en banc, the full Court has never had an opportunity to consider the panel's decision. As urged by the strong *Smith* dissent, the majority should have applied *Gross* to Title VII retaliation because *Gross* created a "uniform principle" of statutory interpretation. *Id.* at 336-37 (Jolly, J. dissenting); *see Gross*, 129 S. Ct. at 2349-50. A "careful and critical examination" of the relevant statutes — as *Gross* instructed — confirms that the bases for the Supreme Court's ruling in *Gross* under the ADEA also exist in the context of Title VII retaliation claims. *Gross*, 129 S. Ct. at 2349; *Smith*, 602 F.3d at 337-38 (Jolly, J. dissenting).

Finding that a mixed-motive framework does not apply to ADEA discrimination claims, *Gross* held it determinative that (1) the ADEA "does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor;" and (2) "Congress neglected to add such a provision to the ADEA when it amended Title VII to add §§ 2000e-2(m) and 2000e-5(g)(2)(B), even though it contemporaneously amended the ADEA in several ways." *Gross*, 129 S. Ct. at 2349. Accordingly, the ADEA's interpretation is not governed by cases construing Title VII discrimination provisions. *Id.* Instead, the proper inquiry is focused on whether the specific text of the ADEA authorizes mixed-motive discrimination claims. *Id.* at 2350. "It does not." *Id.*

## 2. The Medical School was entitled to a but-for causation instruction for Nassar's Title VII retaliation claim.

When *Gross*'s step-by-step analysis is applied to the Title VII retaliation statute, it is clear that the statute also does not authorize mixed-motive claims. 42 U.S.C. § 2000e-3; *see Smith*, 602 F.3d at 338 (Jolly, J. dissenting). Just like the ADEA, the Title VII retaliation statute "does not provide that a plaintiff may establish discrimination by showing that [retaliation] was simply a motivating factor." *Gross*, 129 S. Ct. at 2349. Instead, Title VII's retaliation provisions prohibit action against an employee "*because* he has opposed" an unlawful employment practice. 42 U.S.C. § 2000e-3(a) (emphasis added).

As in the ADEA, Congress also did not add a motivating factor provision to the Title VII retaliation statute when it added § 2000e-2(m) to the Title VII *discrimination* statute and § 2000e-5(g)(2)(B) to the Title VII enforcement statute.

9

*See Gross*, 129 S. Ct. at 2349. In fact, the retaliation statute lacks the express mixed-motive provision included in Title VII's discrimination section. *Compare* 42 U.S.C. § 2000e-3 (retaliation) *with* 42 U.S.C. § 2000e-2(m) (prohibiting mixed-motive discriminatory employment practices) *and* 42 U.S.C. § 2000e-5(g)(2)(B) (providing remedies for proving violations of § 2000e-2(m)). *See also Smith*, 602 F.3d at 337-38 (Jolly, J. dissenting). Accordingly, the proper inquiry is whether the specific text of the Title VII retaliation statute authorizes mixed-motive retaliation claims. *See Gross*, 129 S. Ct. at 2350. It does not.

Moreover, Congress's "careful tailoring" of its 1991 amendments to Title VII "should be read as *limiting* the mixed-motive analysis to the statutory provision under which it was codified — Title VII *discrimination* only, which excludes *retaliation*, the claim here." *Smith*, 602 F.3d at 338 (Jolly, J. dissenting) (quoting and citing *Gross*, 129 S. Ct. at 2351 n.5). To do otherwise would "ignore Congress's decision to amend Title VII's relevant provisions" concerning discrimination but not to make similar changes to the Title VII retaliation provision. *Gross*, 129 S. Ct. at 2349; *Smith*, 602 F.3d at 338 (Jolly, J. dissenting).

It is thus clear that, under *Gross*, Title VII's retaliation language requires a plaintiff to show but-for causation to prove his claims. *Smith*, 602 F.3d at 338 (Jolly, J. dissenting). The Medical School was entitled to this but-for instruction.

**3.    This case demonstrates that the Title VII retaliation burden of proof makes a difference in the jury's evaluation of the evidence.**

This case presents a clean and appropriate vehicle for considering whether *Smith* is consistent with *Gross* because the burden of proof applied in this case

played a significant role in the jury's evaluation of the evidence. Although the panel's opinion set forth only a cursory treatment of the evidence, the record includes undisputed evidence that Fitz consistently and repeatedly opposed Nassar's proposed switch of employer because of the Affiliation Agreement *well before* Nassar's discrimination claim and *well before* any retaliatory animus could have existed. *See* pp. 4-5, *supra*. In contrast, Nassar relied on trial testimony from Keiser, a disaffected former employee, who stated that Fitz told him he put a stop to Nassar's effort to be employed by the Hospital, and Keiser assumed that Fitz did so to retaliate. *See* p. 6, *supra*. The evidence at trial is evaluated very differently depending on the burden applied.

Under the jury's mixed-motive instruction, Nassar could satisfy his burden of proof merely by showing the Medical School "acted at least in part to retaliate." R. 1876. Accordingly, all Nassar had to show was that at least one of the Medical School's motives for blocking Nassar's employment at the Hospital was an illegal retaliatory motive — that retaliation against Nassar for his discrimination claims against Levine was *a factor* in the Medical School's action. *See Smith*, 602 F.3d at 337 (Jolly, J. dissenting). In the panel's view, a jury could find that Nassar met his mixed-motive burden of proof. Op. at 8-9.

Under the but-for causation instruction required under *Gross*, however, Nassar could satisfy his burden of proof *only by showing* that the Medical School never would have objected to or blocked his proposed employment at the Hospital but for a retaliatory motive. *See Smith*, 602 F.3d at 337 (Jolly, J. dissenting). Nassar would have needed to show that Fitz never would have objected to or

11

blocked his proposed employment at the Hospital without the existence of a retaliatory motive against Nassar for claiming discrimination by Levine. *See id.* Stated another way, Nassar *could not* have prevailed "by simply showing that illegal retaliation was only one of a combination of reasons that resulted in" Fitz's opposition to Nassar's switch of employer. *See id.*

### 4.    *Smith* conflicts with decisions of other circuits and contributes to an inconsistent body of law.

The en banc Court should also grant review because *Smith* "creates an unnecessary split in the circuits." *Smith*, 602 F.3d at 336 (Jolly, J. dissenting). For example, the Seventh Circuit has applied *Gross* beyond the ADEA to require but-for causation when the statute employs "because of" language. *Id*. at 336-37. In *Serwatka v. Rockwell Automation, Inc.*, the Seventh Circuit considered whether the Americans with Disabilities Act ("ADA") permitted a mixed-motive discrimination claim and corresponding relief. 591 F.3d 957, 961-62 (7th Cir. 2010). Like the ADEA and the Title VII retaliation statute, the relevant ADA provision prohibited discrimination "because of" a disability. 42 U.S.C. § 12112(a) (2008); *Serwatka*, 591 F.3d at 961 & n.1, 962. The Seventh Circuit correctly noted that *Gross* "ma[de] clear that in the absence of any additional text bringing mixed-motive claims within the reach of the statute," the statutory language "because of" demands "but-for" causation. *Serwatka*, 591 F.3d at 962. The Seventh Circuit thus followed *Gross*'s analytical framework to determine that the ADA lacked an express mixed-motive provision akin to § 2000e-2(m) of Title VII, despite the ADA's cross-references to certain other Title VII provisions concerning powers,

remedies, and procedures. *Id*. As the Seventh Circuit explained, "in the absence of a cross-reference to Title VII's mixed-motive liability language or comparable stand-alone language," a plaintiff must show but-for causation for discrimination claims under the ADA; "proof of mixed motives will not suffice." *Id.*

Importantly, the Seventh Circuit confirmed that *Serwatka* was consistent with an earlier Title VII retaliation case, *McNutt v. Board of Trustees*, 141 F.3d 706 (7th Cir. 1998). *McNutt* concluded that a court could not award injunctive relief, attorney's fees, or costs under 42 U.S.C. § 2000e-5(g)(2)(B) when a plaintiff proved only a mixed-motive theory of retaliation because "mixed-motive decisions based on retaliation were not" authorized by § 2000e-2(m). *Serwatka*, 591 F.3d at 962-63; *see also Speedy v. Rexnord Corp.*, 243 F.3d 397 (7th Cir. 2001). This Court has similarly compared ADA and Title VII authority because "the language of Title VII and the ADA dictates a consistent reading of the two statutes." *E.g.*, *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 233-34 (5th Cir. 2001).

The Seventh Circuit has also applied *Gross* to § 1983 claims, finding that "unless a statute . . . provides otherwise, demonstrating but-for causation is part of the plaintiff's burden in all suits under federal law." *Fairley v. Andrews*, 578 F.3d 518, 525-26 (7th Cir. 2009). And the Seventh Circuit has concluded that *Gross* requires but-for causation for *retaliation* under the ADEA, which prohibits action "because" an employee exercises protected rights. *Barton v. Zimmer*, 662 F.3d 448, 455-56 & n.3 (7th Cir. 2011).

Other courts have applied *Gross* to determine that, directly contrary to *Smith*, mixed-motive retaliation claims under Title VII cannot be brought as a

matter of law.  *See, e.g.*, *Hayes v. Sebelius*, 762 F. Supp. 2d 90, 110-15 (D.D.C. 2011); *see Beckford v. Geithner*, 661 F. Supp. 2d 17, 25 n.3 (D.D.C. 2009) (stating *Gross* "appears applicable to the anti-retaliation provision of Title VII").  For example, a court in the D.C. Circuit has criticized *Smith* by (1) questioning its treatment of *Gross*'s admonition against applying rules of law under one statute to a different statute by improperly stretching the admonition to rules of statutory construction; and (2) stating the basic statutory interpretation rules set forth in *Gross* exist irrespective of *Gross* and should be applied to Title VII to prohibit mixed-motive retaliation claims.  *Hayes*, 762 F. Supp. 2d at 114-15.  Similarly, a court in the Third Circuit has determined that, contrary to *Smith*, "because" in the Title VII retaliation statute requires showing but-for causation.  *Zhang v. Children's Hosp. of Phila.*, Civ. Action No. 08-5540, 2011 WL 940237, at *2 (E.D. Pa. Mar. 14, 2011) ("[T]he Court finds no compelling reason to define 'because,' as used in Title VII's anti-retaliation provision, any differently than the Supreme Court defined the phrase 'because of' in *Gross*.").

Smith* contributes to an inconsistent body of law concerning the proper burden of proof in Title VII retaliation claims, which has prompted critical examination in several legal articles.[2]  To eliminate this inconsistency, and to bring

---

[2] *See* Kourtni Mason, Article, *Totally Mixed Up!: An Expansive View of Smith v. Xerox and Why Mixed-Motive Jury Instructions Should Not Be Applied in Title VII Retaliation Cases*, 38 S.U. L. REV. 345 (2011) (arguing that *Gross* should have controlled this Court's decision in *Smith*); Andrew Kenny, Comment, *The Meaning of "Because" in Employment Discrimination Law: Causation in Title VII Retaliation Cases After Gross*, 78 U. CHI. L. REV. 1031 (2011) (analyzing the burden of proof allocation in Title VII retaliation cases before and after *Gross*); Kimberly Cheeseman, Recent Development, *Smith v. Xerox Corp.: The Fifth Circuit Maintains Mixed-Motive Applicability in Title VII*

14

this Court's precedents back in line with Supreme Court authority and the decisions of other courts of appeals, this Court should grant en banc review.

## CONCLUSION

For the foregoing reasons, this Court should grant rehearing en banc.

Respectfully submitted,

| | |
|---|---|
| __/s/ Daryl L. Joseffer__ | __March 22, 2012__ |
| KING & SPALDING LLP | Greg Abbott |
| Daryl L. Joseffer | Attorney General of Texas |
| 1700 Pennsylvania Ave NW | Daniel T. Hodge |
| Suite 200 | First Assistant Attorney General |
| Washington, D.C. 20006-4707 | David C. Mattax |
| Telephone: (202) 737-0500 | Deputy Attorney General for Defense |
| Facsimile: (202) 626-3737 | Litigation |
| Michael W. Johnston | Robert O'Keefe |
| 1180 Peachtree Street N.E. | General Litigation, Division Chief |
| Atlanta, GA 30309-3521 | Lars Hagen |
| Telephone: (404) 572-4600 | Assistant Attorney General |
| Facsimile: (404) 572-5100 | General Litigation Division |
| Myrna Salinas Baumann | Office of the Attorney General |
| 401 Congress Avenue | P. O. Box 12548, Capitol Station |
| Suite 3200 | Austin, Texas 78711-2548 |
| Austin, Texas 78701 | Telephone: (512) 463-2120 |
| Telephone: (512) 457-2000 | Facsimile: (512) 320-0667 |
| Facsimile: (512) 457-2100 | |

---

*Retaliation Claims*, 85 TUL. L. REV. 1395 (2011) (comparing *Smith* to the Seventh Circuit's opinions extending *Gross* beyond the ADA); *see* Richard Moberly, *The Supreme Court's Antiretaliation Principle*, 61 CASE W. RES. L. REV. 375, 440-46 (2010) (stating *Gross* "seemed to close the door to any argument that 'because of' language could mean 'motivating factor' rather than the 'but for' standard for retaliation claims under Title VII" and that *Smith* was an "unexpected opinion"); *see also* Michael Fox, *5th Circuit En Banc Request on Smith v. Xerox, Please!* (Mar. 25, 2010), http://employers lawyer.blogspot.com/2010/03/5th-circuit-en-banc-request-on-smith-v.html.

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2012 an exact copy of this Petition for Rehearing En Banc was served in compliance with Federal Rules of Appellate Procedure 25(c) and (d) by placing a copy of this Petition for Rehearing En Banc in U.S. certified mail in an envelope with proper postage properly addressed as follows to counsel for Naiel Nassar, MD, Plaintiff - Appellee Cross Appellant:

> Brian P. Lauten
> SAWICKI & LAUTEN LLP
> 4040 N. Central Expressway
> Suite 850
> Dallas, Texas 75204

Also enclosed in the envelope addressed to each counsel was an exact copy of only this Petition for Rehearing En Banc (with cover sheet) in electronic form, namely, a CD with a label including the case name, docket number, identity of the document, and specification of the word processing software and version used to prepare this Petition for Rehearing En Banc.

Service was made in this manner because the above counsel is shown on the Attorney Service Report on CM/ECF as preferring service by mail.


  /s/    Daryl L. Joseffer
Daryl L. Joseffer
Attorney for University of Texas Southwestern Medical Center
Defendant - Appellant Cross-Appellee
Dated: March 22, 2012